IN THE U.S. DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED
2007 NOV 30  P 4:17

| | |
|---|---|
| REGINA BEY-WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO.: 1:07CV1056- |
| ) | |
| ARMY FLEET SUPPORT, LLC ) | JURY DEMAND |
| ) | |
| Defendant. ) | |

## COMPLAINT

### I. INTRODUCTION

1. This is a civil rights action for legal and equitable relief to redress the deprivation of rights guaranteed by the Constitutions and laws of the United States and the State of Alabama, *i.e.*, unlawful race discrimination and retaliation in employment, and violations of state tort law.

2. Plaintiff's claims are based upon Title VII of the Civil Rights Act of 1964 as amended, codified at 42 U.S.C. §§ 1981a & 2000(e), *et seq.*, including 42 U.S.C. § 2000e-3(a) (retaliation); and pursuant to 42 U.S.C. § 2000e-5(f)(3) & (g); 42 U.S.C. § 1981.

### II. JURISDICTION AND VENUE

3. The jurisdiction of this court is invoked by Plaintiff pursuant to 42 U.S.C. § 2000 e-3(a). In addition, jurisdiction of this Court is pursuant to 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act).

4. Plaintiff has exhausted all of the necessary administrative prerequisites. Within 180 days of the discriminatory acts asserting unlawful discrimination, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on November 8, 2006, and an amendment to said charge on February 12, 2007. This lawsuit is filed within 90 days of receipt of the EEOC's Notice of Right to Sue issued on September 4, 2007.

5. All of the acts complained of herein relate to Plaintiff's place of employment within the Middle District of Alabama.

6. Jurisdiction over Plaintiff's Claims based on Alabama law exists under the doctrine of supplemental Jurisdiction 28 U.S.C. § 1391.

### III. THE PARTIES

7. Plaintiff Regina Bey-Wright is an African-American female citizen of the United States and a resident of the State of Alabama. Plaintiff was unlawfully discharged from her position with Defendant on February 19, 2007.

8. Defendant Army Fleet Support, LLC (AFS) provides aviation maintenance and supply support to the U.S. Army Aviation Warfighting Center, the U.S. Air Force and the U.S. Army Aviation Technical Test Center at Fort Rucker, Alabama. AFS is a joint venture company led by L-3 Vertex Aerospace and L-3 Integrated Systems.

9. Defendant is an employer within the meaning of Title VII and is subject to suit under all of the claims alleged herein.

## IV. FACTUAL BACKGROUND

10. On October 9, 2001, Plaintiff was hired as a service attendant with DynCorp Technical Services, Inc.

11. DynCorp Technical Services provided mission support and depot level repair to aircraft and weapons systems worldwide.

12. After the successful completion of her 90-day probationary period, Plaintiff was promoted to a material specialist. Plaintiff was assigned to the supply warehouse.

13. On April 15, 2002, Plaintiff was demoted back to service attendant when she was unable to obtain a CDL license due to birth defect that caused vision impairment.

14. DynCorp acknowledged that Plaintiff had a birth defect but failed to make an accommodation for her disability.

15. Plaintiff was reassigned to Lowe Field.

16. Prior to Plaintiff's demotion, Susan Voss, a white female employee, was demoted from material specialist to service attendant when she was unable to a CDL license due to a disability.

17. However, DynCorp accommodated Voss and she was subsequently reclassified to the position of material specialist.

18. Plaintiff filed a grievance, but was not re-promoted or reclassified to the position of material specialist.

19. In June 2002, Plaintiff filed a charge of discrimination with the EEOC surrounding her demotion.

20. Mark Couch, a white male and an assistant manager of labor relations, was involved in the grievances filed by Plaintiff and Voss and the resolution of same.

3

21. Upon information and belief, Couch has served as assistant manager of Labor Relations throughout Plaintiff's employment.

22. In 2003, Army Fleet Support took over the DynCorp contract, including its employees, at Fort Rucker.

23. In July 2004, Plaintiff requested to be reclassified to material specialist.

24. At the time of this request, Plaintiff was qualified and had satisfied all of the necessary prerequisites for the reclassification.

25. Plaintiff was bypassed and did not receive the position.

26. Jenna Fowler, a white female with less experience and seniority than Plaintiff, was promoted to the material specialist position.

27. In August 2004, Plaintiff again requested reclassification to material specialist.

28. At the time of this second request, Plaintiff remained qualified and had satisfied all of the necessary prerequisites for the reclassification.

29. Again, Plaintiff was bypassed and did not receive the position.

30. Upon information and belief, a white employee was promoted to the material specialist position.

31. In September 2004, Plaintiff contacted the EEOC alleging that she had been denied reclassification because of her race and retaliated against for having previously filed a charge of discrimination.

32. In October 2004, Plaintiff was reclassified to the position of material specialist.

33. Plaintiff was assigned to work the third shift, from 10 P.M. to 6 A.M. and was eligible for overtime.

34. In December 2004, Plaintiff was reassigned to the Defendant's Air Force Project.

35. On March 24, 2005, George Hickman, a white male and the Environmental Health and Safety Officer for Defendant entered the supply tool room where Plaintiff worked through the back door unannounced. Hickman did not identify himself, but began looking through the Hazmat supply cabinets.

36. At the time that Hickman entered the tool room, Plaintiff was performing her duties and responsibilities at the service counter.

37. Plaintiff did not recognize Hickman. Based on his clothing, Plaintiff assumed that Hickman was a member of management.

38. Plaintiff asked Hickman whether he was performing an inspection and he replied, "Yes".

39. Plaintiff was surprised by his response because it was customary for employees to have advance notice of an inspection.

40. Plaintiff returned to the counter to assist another employee.

41. Hickman later came and asked Plaintiff a number of questions regarding items in the Hazmat area of the supply room.

42. Since Plaintiff had not yet received training in this area, she felt intimidated.

43. Plaintiff advised Hickman that she was new and had not yet received the proper training, so she was unfamiliar with the questions asked of her.

44. Plaintiff's co-worker, Harry Smith, returned to the supply room and Hickman immediately began to interact with Smith in a different manner than he had with Plaintiff.

45. It was not until after Hickman had left the supply area that Plaintiff learned from Smith that he was the safety officer.

46. Since Plaintiff was disturbed by this visit, she asked her then supervisor, Mike Elmore, a white male supply supervisor, about the proper procedures for entering the supply tool room.

47. Elmore told Plaintiff that the doors of the supply tool room should be locked to keep out unauthorized persons. Elmore told Plaintiff that if an individual does not work in the tool room, he or she does not have the right to walk in without proper authorization.

48. While working under Elmore's supervision, Plaintiff received an outstanding service award.

49. On June 17, 2005, Hickman returned to the supply tool room through the back door without identifying himself or stating his purpose for being there.

50. Hickman again belittled Plaintiff and spoke to her in a demeaning and disrespectful manner.

51. For example, Hickman commented that auditors would welcome the opportunity to ask her questions during an inspection because "they could look at Harry and tell that he looks like he had been here a while and knows what he is doing."

52. Hickman also inappropriately touched Plaintiff's breast.

53. Harry Smith witnessed Hickman's behavior, including the unwelcomed and inappropriate touching of Plaintiff's breast.

54. After asking other white employees assigned to the tool supply areas about their interaction with Hickman, Plaintiff learned that he did not treat them in this manner.

55. Plaintiff complained to Darlene Whelan, director of Defendant's human resources department about Hickman's behavior in March and June 2005.

56. Specifically, Plaintiff complained that because of her race, Hickman had harassed, discriminated against and otherwise treated her differently than other similarly situated white employees.

57. Plaintiff also complained that Hickman had inappropriately touched her breast.

58. Defendant conducted an internal investigation but concluded that Hickman's actions did not rise to the level of a violation of its policies.

59. However, at the conclusion of Defendant's investigation, Hickman was escorted to the tool supply room by the shop steward, Tom Watts, to apologize to Plaintiff.

60. However, despite this gesture, Hickman continued to harass Plaintiff.

61. In July 2005, Plaintiff complained to her supervisor, Stephanie McGarvey, a white female, that she was being harassed by Hickman.

62. Because of Defendant's inaction, Plaintiff filed an EEOC charge alleging race and gender discrimination.

63. Following the filing of her 2005 charge, Plaintiff the retaliation continued.

64. In February 2006, Plaintiff filed a lawsuit against Defendant and a number of its employees, individually and in their official employment capacities, including George Hickman, Stephanie McGarvey and Lex Morrill.

65. After the filing of her lawsuit, Plaintiff continued to suffer retaliation that interfered with the terms and conditions of her employment.

66. For example, in May 2006, Plaintiff was reprimanded for having a "bad" attitude.

67. Next, Plaintiff received a letter of suspension for an alleged lost tool and was subsequently put on probation for one year.

68. Upon information and belief, other similarly situated persons have not been reprimanded or otherwise disciplined for similar infractions.

69. For example, in August 2006, the material specialist assigned to the first shift Black Hawk project failed to notice a tool missing from a toolbox when it was returned to the supply room.

70. The material specialist assigned to the second shift identified that a tool was missing from this toolbox when it was being inventoried prior to re-issuance.

71. Richard Smith, a white male and flight line supervisor, instructed all employees on the flight line to look for the missing tool.

72. Upon information and belief, when the tool was found, Defendant failed to reprimand or otherwise discipline any employee for this infraction.

73. On November 8, 2006, Plaintiff filed another charge of discrimination with the EEOC alleging race discrimination and retaliation.

74. Shortly thereafter, Plaintiff was admonished for remaining at the work site after her shift without authorization. At the time of this admonishment, Plaintiff was performing her duties related to her position as shop steward.

75. Lori Drysdale, a white female material specialist, was not reprimanded or otherwise disciplined for returning to the work after her shift in the manner that Plaintiff had experienced.

76. For example, after clocking out from her shift on November 17, 2006, Drysdale returned to the work site and performed tasks without authorization.

77. In December 2006, Plaintiff received proper training for tool accountability on the Air Force Project.

78. In light of her probation, on or about February 8, 2007, Plaintiff advised her supervisor Lex Morrill, a white male, about her concerns that tools were not properly being accounted for by second shift employees. Plaintiff explained to Morrill that employees had merely left tools on the counter without having them properly documented or inventoried.

79. Plaintiff explained to Morrill that the second shift employees had become hostile when she requested that they properly return the tools to inventory and that Jim Lietzan, another supervisor, had witnessed the incident.

80. Morrill responded that he would look into the matter but did not take any effective steps to address Plaintiff's concerns.

81. On February 12, 2007, Plaintiff amended her November 8, 2007 charge of discrimination.

82. On February 19, 2007, Plaintiff was terminated from her position for a violation of Defendant's "Excessive Rule Violation Clause".

83. The reason given for Plaintiff's termination was pretextual.

84. Plaintiff was discriminated against and retaliated against in the terms, conditions and privileges of employment, as stated above, based on her race and because she opposed race discrimination.

85. Plaintiff was directly affected by said discriminatory and retaliatory practices by being deprived of the opportunity to work in an environment free of racial discrimination and retaliation. Such discrimination and retaliation denied Plaintiff

the right to work in a racially integrated work environment and otherwise affected her opportunity for enjoyment of work as compared to white employees.

86. As a result of said injury and damage, Plaintiff is entitled to back pay with interest, reinstatement, front pay, and compensatory and punitive damages, attorneys' fees and costs.

## V. STATEMENT OF CLAIMS

### CLAIM ONE
### VIOLATION OF TITLE VII, 42 U.S. C. § 2000e *et seq.*
**(Discrimination on the Basis of Race)**

87. Plaintiff realleges the above paragraphs as if fully set out herein.

88. Plaintiff is a member of a class protected by 42 U.S.C. § 2000e *et seq.*, and is qualified for employment with Army fleet Support.

89. The conduct of Defendant, Army Fleet Support, as set forth above, constitutes unlawful discrimination against Plaintiff on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and is part of Defendant's pattern and practice of discrimination on the basis of race. Plaintiff was denied a work environment free of discrimination in violation of 42 U.S.C. § 2000e *et seq., as amended*, 42 U.S.C. § 1981a, and was not given equal opportunity in the terms and conditions of her employment.

90. Defendant's said treatment of Plaintiff on the basis of race altered the terms and conditions of Plaintiff's employment and unreasonably interfered with Plaintiff's opportunity and ability to perform her job.

91. As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits,

mental and emotional distress, humiliation, loss of self esteem, depression, expense, embarrassment, and damage to her reputation.

## CLAIM TWO
### RETALIATION UNDER TITLE VII, 42 U.S.C. § 2000e-3(a)
### (Retaliation)

92. Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

93. The conduct of Defendant, as set forth herein, constitutes unlawful retaliation against Plaintiff for her having opposed discriminatory treatment based upon race, in violation of Title VII and 42 U.S.C. § 1981a.

94. As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income, loss of other employment benefits, mental and emotional distress, humiliation, loss of self esteem, depression, expense, embarrassment, and damage to her reputation.

## CLAIM THREE
### VIOLATION OF 42 U.S.C. § 1981
### (Discrimination and Retaliation on the Basis of Race)

95. Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

96. Plaintiff is a member of a class protected by 42 U.S.C. § 1981 and is qualified for employment with Army Fleet Support.

97. The conduct of Defendant, its agents and employees constitutes unlawful discrimination and retaliation against Plaintiff on the basis of race, in violation of 42 U.S.C. § 1981, and constitutes part of Defendant's pattern and practice of retaliation and discrimination on the basis of race.

98. As a direct and proximate result of said acts, Plaintiff has suffered and continue to suffer loss of employment, loss of income, loss of other employment benefits, mental and emotional distress, humiliation, loss of self esteem, depression, expense, embarrassment, and damage to her reputation.

### CLAIM FOUR
### NEGLIGENT SUPERVISION AND TRAINING

99. Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

100. This is a claim arising under the law of the State of Alabama claiming that Defendant committed the tort of negligent supervision and training.

101. At all relevant times, the Defendant was and continues to be responsible for the training and supervision of its supervisors at the Fort Rucker location.

102. The conduct of the Defendant, as set forth above, was a breach of said Defendant's duty to Plaintiff to exercise care in supervising and training employees, and such breach proximately caused Plaintiff to be discriminated and retaliated against, suffer humiliation, mental pain and anguish, and all other injuries outlined herein, all to Plaintiff's damage.

### CLAIM FIVE
### NEGLIGENT RETENTION

103. Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

104. This is a claim arising under the law of the State of Alabama claiming that Defendant committed the tort of negligent retention.

105. The conduct of the Defendant, as set forth above, was a breach of its duty to Plaintiff to exercise care in retaining employees, and such breach proximately

caused her to be discriminated and retaliated against, suffer humiliation, mental pain and anguish, and all other injuries outlined herein, all to Plaintiff's damage.

## CLAIM SIX
## NEGLIGENCE

106. Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

107. This is a claim arising under the law of the State of Alabama claiming that Defendant committed the tort of negligence.

108. Defendant, by its actions and omissions, breached the standard of care owed to Plaintiff while an employee of said Defendant. The conduct of said Defendant, as set forth herein, was a breach of its duty to Plaintiff to exercise due care.

109. The conduct of Defendant, as set forth above, was a breach of its duty to Plaintiff to exercise due care, and such breach proximately caused her to be discriminated and retaliated against, suffer humiliation, mental pain and anguish and all other injuries outlined herein, all to Plaintiff's damage.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendant:

(a) Declaring that the acts and practices complained of herein are in violation of Title VII, 42 U.S.C. §§ 1981, 1981a, & 2000e *et seq.*, and state tort law;

(b) Ordering Defendant, Army Fleet Support to make Plaintiff whole by providing appropriate front pay, back pay and interest thereon, and reimbursement for lost compensation, social security, prejudgment interest, and all other entitlements and emoluments in an amount to be shown at trial, and other affirmative steps immediately to eliminate the effects of the discriminatory practices complained of herein;

(c) Granting to Plaintiff reasonable attorneys' fees, expert fees, costs, and expenses incurred herein, 42 U.S.C. §§ 1988 & 2000e-5(k);

(d) Granting to Plaintiff compensatory and punitive damages to the extent permitted by law;

(e) Retaining jurisdiction over this action until the Defendant, Army Fleet Support has fully complied with the Orders of this Court and requiring said Defendant to file such reports as may be necessary to supervise such compliance;

(f) Ordering Defendant, Army Fleet Support, to adopt and strictly enforce written rules prohibiting discrimination and retaliation in the workplace; that such rules provide for the prompt and appropriate investigation of all related complaints; and that such rules require formal disciplinary action to be taken against any employee or agent found to have engaged in such discrimination or retaliation against any employee;

(h) Granting such other, further, and different relief to Plaintiff which it may deem proper.

Respectfully submitted this 30th day of November, 2007.

*Maricia Woodham*
MARICIA WOODHAM (*BEN050*)
Attorney for Plaintiff

**OF COUNSEL:**
Sabel & Sabel, P.C.
Hillwood Office Center
2800 Zelda Rd.; Suite 100-5
Montgomery, AL 36106
(334) 271-2770
(334) 277-2882 *facsimile*

### JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

*Maricia Woodham*
MARICIA WOODHAM
Attorney for Plaintiff

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602001331
Cashier ID: cstrecke
Transaction Date: 11/30/2007
Payer Name: SABEL AND SABEL
------------------------------------
CIVIL FILING FEE
 For: SABEL AND SABEL
 Case/Party: D-ALM-1-07-CV-001056-001
 Amount:         $350.00
------------------------------------
CHECK
 Remitter: SABEL AND SABEL
 Check/Money Order Num: 9321
 Amt Tendered:   $350.00
------------------------------------
Total Due:       $350.00
Total Tendered:  $350.00
Change Amt:      $0.00
```

DALM107CV001056-TFM

SABEL AND SABEL

2800 ZELDA ROAD SUITE 100-5

MONTGOMERY, AL  36106